UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 16-CR-246(3) (JRT/FLN) |
| Plaintiff, | |
| v. | **MOTION TO INTRODUCE** |
| W. JEFFREY TAYLOR, | **EXCULPATORY EVIDENCE** |
| Defendant. | |

---

      Defendant, W. Jeffrey Taylor, hereby moves the Court through his undersigned counsel for an Order allowing him to introduce statements of two Danish witnesses without having either attend trial, in person.  Due to the lack of an enforceable, Mutual Legal Assistance Treaty ("MLAT") with Denmark, the only lawful way to secure the Danish witnesses in person testimony is a letter rogatory from this Court to the United States Department of State, asking for assistance from Denmark.  However, since the letter rogatory process will cause significant delay in trial and otherwise is recognized as unreliable, this Court should allow testimony via video conference, allow a voluntary deposition to be taken, and also admit statements as hearsay under the residual exception, Fed. R. Evid. 807.

### Offer Of Proof

      There are at least two Danish national witnesses, former Sonion A/S employees, who have made relevant out-of-court statements but are unavailable for trial.  The first is Jesper Lilledal, a former Sonion A/S vice president.  Attached hereto as Exhibit TMH-1 is a true and correct copy of Defendant's investigator's memorandum of a telephonic interview taken of Mr. Lilledal.  Attached hereto as Exhibit TMH-2 is a true and correct copy of email correspondence

1

between defense counsel, Mr. Lilledal, and Mr. Richard Raskin, counsel for Sonion. TMH-2 demonstrates that Mr. Lilledal is unwilling to voluntarily attend trial in the United States, but will give voluntary testimony from Denmark, if permitted.

The second unavailable Danish witness is Jorn Morkeberg-Nielsen, Sonion's former CEO and CFO. Mr. Nielsen was Sonion's CFO before the Technitrol acquisition in 2008, and was hired back as CEO after the Danish reacquisition in 2009, serving in that capacity until 2015. He has now accepted a different CEO position for a Danish company not operating in the hearing industry. On December 3, 2016, Mr. Morkeberg-Nielsen gave a statement to the Government with the assistance of Mr. Raskin as counsel, while he still served as Sonion's CEO. The memorandum of that statement is attached hereto as Exhibit TMH-3. Mr. Morkeberg-Nielsen has not responded to defense counsel's attempts to contact him via phone, email, and social media. Furthermore, according to Mr. Raskin, Sonion no longer can procure him as a witness due to his change in employment.

Upon belief, the Government does not intend to call Mr. Morkeberg-Nielsen as a witness because he made a crucial, exculpatory statement during his Government interview. Specifically, while Mr. Morkeberg-Nielsen denied knowledge of Archer Acoustics, he would have approved the arrangement if consulted because Sonion would not have restricted Starkey from extending its pricing to third party manufacturers. He is attributed as stating "he was not aware of the deal, but most likely would have agreed to it because Starkey can do what they want with the product." (TMH-3, at 4).

Instead, the Government's only Danish witness appears to be Christian Nielsen, Sonion's current CEO. Mr. Nielsen joined Sonion around 2011 as its CFO, and only became CEO in 2015. Given that the Indictment period begins as late as 2002, Mr. Nielsen lacks any direct

knowledge of the first nine or more years of the charged conduct.  Further, he only had a supervisory role over Defendant for part of the last year of the Indictment period, 2015.

### This Court Should Allow Video Conference Testimony, Voluntary Deposition And Admit Statements Under The Residual Exception

Defendant has a crucial right under the Due Process Clauses of the Fifth and Fourteenth Amendments, as well as the Sixth Amendment, to a defense including the presentation of exculpatory evidence through compulsory process.  *Washington v. Texas*, 388 U.S. 14, 19 (1967).  The Court said:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.*

Unfortunately, there is no meaningful method of procuring the in-court testimony of the Danish witnesses, without a significant and almost surely unfruitful disruption of trial.  Foreign national witnesses, who are natural persons, cannot be compelled by direct service of process.  *See* 28 U.S.C. § 1783(a)(only allowing for extra-territorial process to compel U.S. nationals who can only be found abroad); *United States v. Farfan - Carreon*, 935 F.2d 678, 680 (5th Cir.1991); *United States v. Sindona*, 636 F.2d 792, 803 (2d Cir.1980), *cert. denied*, 451 U.S. 912 (1981). However, a comprehensive MLAT can provide a direct avenue to secure testimony through the assistance of a foreign government, including requests made by private litigants if such a private right is contemplated by the MLAT's terms.  *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993); *see United States v. Jefferson,* 594 F.Supp.2d 655, 674 (E.D. VA 2009) (analyzing the particular language of an MLAT to determine whether or not it created an enforceable right

3

for private litigants); *United States v. Rosen*, 240 F.R.D. 204, 213 - 14 (E.D. VA 2007). Regrettably, upon belief, there is no direct MLAT with Denmark, instead Denmark and the United States are only bound by the Agreement On Mutual Legal Assistance between the United States Of America and the European Union signed 25 July 2013.  *See* TMH-4 (a copy of the Danish United States agreement ratifying the U.S. E.U MLAT).  This MLAT does not is intended to supplement preexisting MLAT, and by its terms, it provide no explicit right of private action, though it does suggest that the United States and Denmark coordinate testimony by video conferencing.  (*Id*. at p. 8; Art. 3, p. 1 "Video Conferencing") ("[t]he use of video transmission technology shall be available between the United States of America and the Kingdom of Denmark for taking testimony in a proceeding for which mutual legal assistance is available of a witness or expert located in the requested State.")

Defendant seeks the testimony of the Danish witness by their voluntary consent, when possible.  This can most easily be accomplished in the case of Mr. Lilledal by video conference testimony and deposition.  While Mr. Lilledal has expressly refused to travel to the United States, he has offered to participate via remote conference.  His statement contained in TMH - 2 is sufficient to meet Defendant's burden of proving unavailability under Fed. R. Crim. P. 15, to support taking of a deposition.  "Although an affidavit from the proposed deponent represents the most reliable way to establish that individual's probable unavailability, affidavits are not the only means available to show that a substantial likelihood exists that the proposed deponent will not testify at trial."  *Jefferson,* 594 F.Supp. at 664 - 65; *citing United States v. Des Marteau*, 162 F.R.D. 364, 369 (M.D.Fla.1995) ("[Rule] 15 does not explicitly require supporting affidavits, and representations made by counsel in open court have been held sufficient to establish probable unavailability.").  While the undersigned could not locate a specific rule governing when video conference testimony could be used in a criminal case, Rule 15 provides persuasive

context. As a result, this Court should order that Defendant may present Mr. Lilledal's testimony via video conference, as well as take his voluntary deposition in Denmark, to be prepared for the eventuality that video conference technology is ultimately unfeasible. Defendant will work to find a mutually acceptable date for deposition of Mr. Lilledal with the Government, either before trial commences or over the Super Bowl break, should the Court grant the request.

Mr. Morkeberg-Nielsen's situation is, regrettably, more challenging. Mr. Morkeberg-Nielsen has been unwilling to communicate with defense counsel whatsoever despite good faith efforts, thus there is no indication he would participate in a voluntary deposition or video conference testimony. This Court should order, therefore, that unless Mr. Nielsen changes his position before the start of trial upon defense counsel's continued diligent attempts to contact him, Defendant may admit Mr. Morekeberg-Nielsen's exculpatory statements, including about Archer Consulting, as hearsay under the residual exception.[1]

The residual exception under Fed. R. Evid. 807 provides a four prong test for admissibility if:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

Mr. Morkeberg-Nielsen's exculpatory statements have circumstantial guarantees of trustworthiness similar to sworn testimony. He made his statement, with assistance of counsel, to an agent of the Government in a criminal investigation, therefore any false claims could have

---

[1] Should Defendant's other, good faith efforts to obtain testimony from Mr. Lilledal fail, Defendant hereby notices the Government of an intent to rely on the residual exception for Mr. Lilledal's statements contained in TMH - 1.

subjected him to criminal prosecution – akin to statements under formal oath. [2] Further, despite it being taken and memorialized by a Government agent with an obvious bias against Defendant, Mr. Morkeberg-Nielsen's recitation was nonetheless attributed as making a strongly exculpatory statement. His tacit approval of Archer Acoustics was, certainly, not what the agent wished to hear, yet Mr. Morkeberg-Nielsen must have been vehement enough that the agent could not ignore or minimize his position. This statement is also against the pecuniary interest of his then employer, in that the Government's prosecution theory on Archer Acoustics posits that Sonion suffered financial harm hypothetically compensable through restitution or a civil action (assuming the Government's theory is correct, of course).

The statement also is material, exculpatory evidence. Mr. Morkeberg-Nielsen is the only witness contacted by the Government who had a supervisory role over Defendant at Sonion A/S. He necessarily interacted with Defendant on crucial decisions regarding Sonion's commercial relationship with Starkey. The fact that he likely would have approved of Archer Acoustics strongly disproves the Government's claim that Sonion only extended Starkey's pricing to the third-party manufacturers based on Defendant's purported false claim of a Starkey affiliation. According to Mr. Morkeberg-Nielsen, such a misrepresentation was apparently unknown to him, but furthermore was immaterial as Sonion did not purport to restrict the ability of Starkey to extend its pricing and product to third parties.

There is no comparable, probative evidence on this point. As mentioned, Mr. Morkeberg-Nielsen is the only interviewed witness whose employment role included supervising how Defendant extended pricing in the United States to Starkey and others. While,

---

[2] To be clear, Defendant is not suggesting that all statements made to Government agents in a criminal investigation will be reliable under Rule 807. Given the interest of the party soliciting the statement, as well as the Declaration, exculpatory statements to Government agents are inherently more reliable than inculpatory statements.

6

Mr. Lilledal's statement seems to support the general proposition that pricing at Sonion was informal, as opposed to structured to prevent the type of pricing arrangement supposedly employed through Acoustics, however Mr. Lilledal was not in a position approve or disapprove of Defendant's conduct.

Finally, admitting the exculpatory statement will serve the interests of justice. Whether by design or happenstance, the Government's trial strategy exhibits inherent deceptiveness, in that will not present any Danish witnesses with knowledge of Sonion's pricing policies or of Defendant's supervision by Sonion A/S's CEOs, up until late 2015. Instead their only witness, Christian Nielsen, did not supervise Defendant except during part of the last year of the relevant period, at most. Given that Defendant's liberty is at stake, he should be able to elicit these crucial pieces of evidence and the residual exception provides a perfectly appropriate avenue.

Should the Court be unwilling to permit video conference testimony, deposition and use of the residual exception, Defendant hereby moves the Court to request letters rogatory from the United States Department of State, seeking Denmark's assistance in compelling Mr. Lilledal and Mr. Morkeberg-Nielsen to attend trial. While the Court has inherent authority to issue requests for letters rogatory, the letters rogatory procedure has been described as "complicated, dilatory, and expensive." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court*, 482 U.S. 522, 531 (1987). There is no guarantee of success, and the goal of presenting relevant, exculpatory evidence can be accomplished more easily and effectively through video conferencing, voluntary deposition, and use of the residual exception.

Date:  December 14, 2017                         Respectfully submitted,


By:    */s/ William J. Mauzy*
      William J. Mauzy (#68974)
      Casey T. Rundquist (#0390475)
      800 Hennepin Avenue
      Suite 800
      Minneapolis, MN 55403
      (612) 340-108
    *Attorney for Defendant*