**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>W. JEFFREY TAYLOR,<br><br>Defendant. | Criminal No. 16-246(3) (JRT/SER)<br><br>**SENTENCING MEMORANDUM ON FORFEITURE AND RESTITUTION** |

Erica H. MacDonald, United States Attorney, and Benjamin F. Langner, Craig R. Baune, and Surya Saxena, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN  55415, for plaintiff.

William J Mauzy and Casey T. Rundquist, **MAUZY LAW PA,** 800 Hennepin Avenue, Suite 800, Minneapolis, MN  55403, for defendant.

Defendant W. Jeffrey Taylor was found guilty of one count of mail fraud and two counts of wire fraud.  (Verdict, Mar. 8, 2018, Docket No. 418.)  On December 20, 2018, the Court sentenced him to 18 months' imprisonment, ordered him to pay restitution, and granted in part and denied in part a Motion for Preliminary Order of Forfeiture brought by the United States.  This memorandum supplements the Court's determination regarding forfeiture and restitution.

**BACKGROUND**

Taylor was indicted on 16 separate counts.  (3d Superseding Indictment ("Indictment"), Jan. 8, 2018, Docket No. 298.)  Underlying the Indictment were a series of

alleged fraudulent transactions connected to schemes to defraud Taylor's employer Sonion A.S. ("Sonion"), and Starkey Laboratories ("Starkey"). Twelve counts related to an alleged sham entity called Archer Consulting, Inc. ("Archer") and payments made from Starkey to Archer, which were then distributed in part to Taylor. (*Id.* ¶¶ 58–62.) Three counts related to companies called Archer Acoustics and Claris Investments, which were controlled in part by Taylor. (*Id.* ¶ 60.) Finally, one count included a conspiracy charge against Taylor and his co-defendants, and alleged that the listed actions and companies were part of one conspiracy to defraud. (*Id.* ¶¶ 17-56.)

A jury returned a guilty verdict on three counts, Counts 4, 7, and 19. (Verdict at 1-3.) Count 4 concerned Taylor's role in Archer, and alleged that Taylor caused a check in the amount of $60,000 to be sent from Archer's bank account, and that this action was in furtherance of a scheme to defraud Starkey, thereby constituting mail fraud in violation of 18 U.S.C. § 1341. As the Court has previously noted, the jury's verdict as to the Archer counts is largely difficult to reconcile. *See United States v. Ruzicka*, 333 F. Supp. 3d 853, 873 (D. Minn. 2018) (noting that some of the Archer conduct for which the jury convicted Taylor "is effectively indistinguishable" from other Archer conduct on which the jury acquitted Taylor). Counts 7 and 19 concerned Taylor's role in Archer Acoustics.

Before sentencing, the United States filed a Motion for a Preliminary Order of Forfeiture, seeking the forfeiture of property and money Taylor obtained as a result of his fraudulent schemes. (Mot. for Prelim. Order of Forfeiture, Dec. 3, 2018, Docket No. 577.) Specifically, the United States requested the forfeiture of all funds and holdings in Paychex Retirement Services 401(k) Profit Sharing Plan and Trust (the "401k"), Plan Number

153205; a money judgment in the amount of $3,152.759.48; a general order of forfeiture, and an order authorizing discovery to locate additional assets that may be subject to forfeiture. (*Id.* at 1.)

The United States argued that the 401k and the money judgment are subject to forfeiture because they represent the proceeds of the criminal activity for which Taylor was convicted on Count 4, the Archer scheme. (*Id.* at 6-15.) The United States also, in preparation for sentencing, submitted restitution requests from Starkey and Sonion. Starkey requested restitution from Taylor in the amount of $7,651,189.73, based in part on the money Taylor received from the alleged Archer scheme. (Presentence Investigation Report ("PSR") ¶ 72, Nov. 16, 2018, Docket No. 556.) Sonion sought restitution in the amount of $1,769,178.34. (*Id.* ¶ 73.)

## DISCUSSION

### I. FORFEITURE

Under 18 U.S.C. § 981, "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of" the mail and wire fraud statutes is subject to forfeiture. *See* 18 U.S.C. § 981(a)(1)(C); *see also* 18 U.S.C. § 1956(c)(7)(a); 18 U.S.C. § 1961(1); and 28 U.S.C. § 2461(c). "[I]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). "The government must prove the elements of forfeiture under 18 U.S.C. § 982(a)(1) by a preponderance of the evidence." *United States v. Beltramea*, 785 F.3d 287, 290 (8th Cir.

2015) (citations omitted). The same standard applies to forfeiture under 28 U.S.C. § 2461(c). *Id.* Forfeiture is therefore proper when a court finds by a preponderance of the evidence that the property requested is traceable to the violation of a convicted crime for which forfeiture is authorized.

The main dispute between the United States and Taylor involves the forfeiture based on Count 4. The United States argues that, because Count 4 charged Taylor with partaking in a scheme to defraud Starkey through Archer, and because courts have held that all proceeds from a scheme to defraud—not just the proceeds from convicted charges—are forfeitable, the IRA account and the money judgment are proper subjects of forfeiture. Taylor argues that, because he was acquitted on eleven of twelve counts regarding Archer, forfeiture of the amounts the United States requests is improper.

The United States cites case law from outside of the Eighth Circuit for the proposition that forfeiture of all the proceeds obtained from a scheme to defraud—not just the proceeds of a count of conviction—are subject to forfeiture, and that this rule extends even to proceeds tied to conduct for which a defendant was acquitted.[1] It argues that the Eighth Circuit's rulings on forfeiture statutes other than the one at issue here signal that the Eighth Circuit has accepted the concept that proceeds from acquitted charges may be subject to forfeiture.

---

[1] The United States cites *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016); *United States v. Cox*, 851 F.3d 113 (1st Cir. 2017); and *United States v. Venturella*, 585 F.3d 1013 (7th Cir. 2009).

The Court agrees it is likely that the Eighth Circuit would join the circuit courts that have explicitly held that proceeds stemming from acquitted counts may be subject to forfeiture under 18 U.S.C. § 981. Nevertheless, the United States still must prove by a preponderance of the evidence that the funds in the IRA account and the $2,714,628.95 it seeks through a money judgment are directly traceable to Count 4.

The United States, in attempting to meet its burden, argues that the mailing underlying Count 4 constituted just one execution of a larger scheme to defraud Starkey through Archer. Count 4 charged Taylor with mail fraud, and was based on a February 3, 2015 check sent from Archer to Paychex Retirement Services in the amount of $60,000. The United States argues that this one execution of mail fraud is indicative of the entire Archer scheme, which allegedly started in 2006 and ran through 2015, and that all the Archer payments are subject to forfeiture. In support, it submitted extensive financial documentation tracing the various payments made from Starkey to Archer, and from Archer to Taylor. (*See* Decl. of J. Matthew Snell, Dec. 3. 2018, Docket No. 578.)

However, the United States has not proven by a preponderance of the evidence that all of the money obtained by Taylor from Archer between 2006 and 2015 is directly traceable to the illegal scheme underlying Count 4. As the Court previously noted, "the full nature of the [Archer] scheme is difficult to discern." *Ruzicka*, 333 F. Supp. 3d at 873. That statement remains true. While the jury determined that Taylor engaged in a scheme, and that the February 3 mailing was a part of that scheme, it is not clear to the Court by a preponderance of the evidence that the mailing underlying Count 4 was one part of a broader scheme that lasted nonstop from 2006 to 2015.

Clearly, the jury was also unsure of what place the February 3 mailing had in the larger scheme. As noted, the jury acquitted Taylor of eleven other mail and wire fraud counts that related to the payments Archer received. Those counts were based on mailings and wirings spanning from 2012 to 2015, which the government argues only encompassed part of the entire scheme. Despite the limited time period underlying the charged conduct, the jury did not find that Taylor was guilty for any of those additional mailings or wirings, even though the conduct was nearly identical to the conduct underlying Count 4.

While the jury's determinations are not dispositive of the issue of forfeiture, they do indicate the substantial confusion surrounding the Archer scheme, including how long or wide-reaching it may have been. For that reason, the Court does not find that the United States has proven by a preponderance of the evidence that all the Archer proceeds were tied to the scheme charged in Count 4, and does not believe it is appropriate to speculate as to when the scheme underlying the Count 4 conviction started or what conduct it encompassed. As Taylor has pointed out, there was significant evidence produced at trial that Bill Austin knew of Archer Consulting for some time, knew that Taylor was involved with Archer, and knew that Starkey was paying Archer for various reasons. Additionally, the indictment acknowledged that from 2006 to 2010 Taylor and his co-defendant Jerry Ruzicka, through Archer, billed Starkey for commissions, but from 2010 to 2015 billed Starkey for consulting. While the United States summarily contends that all of the Archer payments were part of the scheme as charged in Count 4, the Court does not find that they have proven as much by a preponderance of the evidence. Accordingly, the Court will

only grant forfeiture on Count 4 for $30,000, encompassing the amount charged in that Count and attributable to Taylor.

## II. RESTITUTION

The Mandatory Victims Restitution Act ("MVRA") applies to this case. 18 U.S.C. §§ 3663A, 3664. As its name suggests, the MVRA makes restitution mandatory when it applies. The MVRA provides that "the court shall order . . . that the defendant make restitution to the victim" of property crimes. *Id.* § 3663A(a)(1), (c)(1)(A)(ii).

For MVRA purposes, a "victim" is one who is "directly and proximately harmed as a result of the commission of [the] offense," including one who is "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." *Id.* § 3663A(a)(2). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." *Id.* § 3664(e).

### A. Restitution to Starkey

The PSR recommends granting restitution to Starkey in the amount of $7,651,189.73, based on Taylor's conviction on Count 4. However, for the same reasons the Court rejected much of the United States' forfeiture demand regarding the Archer scheme, the Court finds that the United States has not shown by a preponderance of the evidence that all of the $7,651,189.73 is linked to Count 4, the only count of conviction for Archer conduct. At most, the Court would award $60,000 to Starkey based on Taylor's

conviction on Count 4. However—as discussed at the sentencing hearing—because the United States is already receiving $60,000 in forfeiture from Ruzicka and Taylor and may apply that amount to Taylor's restitution, the Court will not grant Starkey restitution for any of the conduct related to Count 4.

### B. Restitution to Sonion

Sonion submitted a restitution request in the amount of $1,769,178.34. (PSR ¶ 73.) A large portion of the request incorporates legal fees that Sonion incurred for its involvement with this case. Taylor objects to the inclusion of those legal fees.

"As a general matter, a victim's legal and investigatory fees are recoverable as restitution in a criminal case." *United States v. Hogeland*, Crim. No. 10-0061 PJS/AJB, 2012 WL 4868904, at *3 (D. Minn. Oct. 15, 2012) (citing *United States v. Stennis-Williams*, 557 F.3d 927, 930 (8th Cir. 2009). However, as in *Hogeland*, the United States has not provided any evidence to support Sonion's requested restitution for legal fees, "and thus the Court is unable to determine whether that figure accurately represents the fees and expenses" Sonion incurred. *Id.* Accordingly, the Court does not find the United States proved by a preponderance of the evidence that Sonion is entitled to restitution for legal fees.

Removing the legal fees and other non-reimbursable requests Sonion submitted, Sonion's request is narrowed to $338,310.14. This amount is based on Taylor's two convictions (Counts 7 and 19) for his role in the Archer Acoustics scheme, which worked to defraud Sonion. Taylor objects to this request. He argues that, although Taylor gained as a result of the Archer Acoustics scheme, Sonion did not suffer a loss. And, because

restitution is meant to restore a victim, Taylor argues that no restitution should be awarded. However, the Court has previously rejected a similar argument, and found that "even if Taylor did bring additional business to Sonion, his 'cut' represented profits that Sonion could have earned had Taylor brought in the business as President of Sonion U.S. instead of as co-owner of Archer Acoustics," and that although Taylor brought profits to Sonion, "the total profit may have been lower than it could have been had Taylor brought in those customers by negotiating deals on behalf of Sonion." *Ruzicka*, 333 F. Supp. 3d 853, 889 (D. Minn. 2018). Accordingly, the Court finds that Taylor's role in Archer Acoustics caused Sonion a loss, and that the United States proved as much by a preponderance of the evidence.

On top of Sonion's request, the PSR and the United States argue that Sonion is owed an additional $358,582.24. This additional amount comes from Taylor's operation of another company, Claris Investments. The United States argues that Claris operated in a similar manner as Archer Acoustics and was used to defraud Sonion. Taylor's operation of Claris was the subject of Count 6, of which he was acquitted.

The Court does not find that the United States proved by a preponderance of the evidence that the Claris amounts are sufficiently tied to a count of conviction to order restitution. The United States argues that Claris and Archer Acoustics were both operated as part of one larger scheme to defraud Sonion. However, the jury acquitted Taylor for his Claris conduct. Although the acquittal is not dispositive of the restitution question here, it is indicative of the fact that the United States has not sufficiently shown that the two companies operated as one scheme. Accordingly, the Court will limit Sonion's restitution

amount to that which it requested, minus the legal fees and other non-reimbursable amounts, and award Sonion, $338,310.14, owed jointly and severally with Ruzicka.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The United States' Motion for a Preliminary Order of Forfeiture as to Defendant Taylor [Docket No. 577] is **GRANTED** in part and **DENIED** in part.

2. Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), Defendant Taylor is ordered to forfeit $30,000 of funds or other holdings from a Paychex Retirement Services 401(k) Profit Sharing Plan and Trust, Plan Number 153205, in the name of Archer Consulting Inc.

3. Taylor must also forfeit any property which constitutes or is derived from proceeds traceable to the offenses for which he has been convicted, which property has not yet been identified or located.

4. The United States may take discovery to identify additional assets potentially subject to forfeiture.

5. The Court shall retain jurisdiction to enforce this Order and will amend it if additional specific property is identified pursuant to Federal Rule of Criminal Procedure 32.2(b)(2)(C).

6. The United States' Motion for a Preliminary Order of Forfeiture is **DENIED** as to the $3,152.759.48 money judgment against Taylor.

-11-

7. Taylor is ordered to pay restitution to Sonion A.S. in the amount of $338,310.14, owed jointly and severally with Jerome C. Ruzicka.

DATED: May 15, 2019
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
Chief Judge
United States District Court